## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| TUBE FORGINGS OF AMERICA, INC. and MILLS IRON WORKS, INC., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> NORCA INDUSTRIAL COMPANY LLC and INTERNATIONAL PIPING & PROCUREMENT GROUP, LP, <br><br> Consoidated Defendant-Intervenors. | Consol. Court No. 23-00231 |

**DEFENDANT-INTERVENORS' RESPONSE TO CONSOLIDATED PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6237
jeremy.dutra@squirepb.com

May 28, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

CERTIFICATE OF COMPLIANCE ..................................................................................... iv

I.  RULE 56.2 STATEMENT ........................................................................................... 1

   A.  Administrative Determination Sought to Be Reviewed ...................................... 1

   B.  Issue Presented .................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

   A.  Standard of Review ............................................................................................. 2

   B.  Legal Framework for Scope Rulings .................................................................. 3

   C.  Commerce appropriately relied on (k)(1) sources in determining that merchandise described in scenario 2 of the CMI does not fall within the scope of the Order. ........................................................................................... 4

   D.  Substantial evidence supports Commerce's determination that Chinese-origin rough fittings—*i.e.*, merchandise that only underwent the first stage of production in China—are not CSBW fittings in unfinished form, and thus not covered by the Order. ............................................................................................ 6

   E.  The *Thailand Circumvention Ruling* supports Commerce's Final Results in this CMI Proceeding that rough parts are not CSBW fittings in unfinished form, and thus not covered by the Order. ........................................................... 10

III. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) .................................................. 2
*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........................................................................ 2
*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) ...................................................................... 3
*King Supply Co. v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ................................................ 2
*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017) ............................. *passim*
*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ............................................ 9
*Sango Int'l LP v. United States*, 484 F.3d 1371 (Fed. Cir. 2007) .................................................... 3
*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714 (CIT 2001) ....................... 9
*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   776 F.3d 1354 (Fed. Cir. 2015) .................................................................................................. 5
*Tak Fat Trading Co. v. United States*, 396 F.3d 1378 (Fed. Cir. 2005) .......................................... 3
*U.K. Carbon & Graphite Co. v. United States,* 37 CIT 1295 (2013) ............................................ 10

**Statutes**

19 U.S.C. § 1516a(a)(2)(B)(vi) ........................................................................................................ 2
19 U.S.C. § 1673e(a)(2) ................................................................................................................... 3

**Regulations**

19 C.F.R. § 351.225 ............................................................................................................. *passim*
19 C.F.R. § 351.225(e) .................................................................................................................... 3
19 C.F.R. § 351,225(k)(1) ..................................................................................................... *passim*
19 C.F.R. § 351.225(k)(1)(ii) .......................................................................................................... 7

**Other Administrative Materials**

*Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29702, 29703 (Dep't of Commerce Jul. 6, 1992) ........................ 4

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) (Final Rule) ................ 5

## CERTIFICATE OF COMPLIANCE

    Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, Defendant-Intervenors' counsel certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 2,977 words, excluding those exempted portions of this brief.

                                                                     /s/ Jeremy W. Dutra

May 28, 2024

Consolidated Defendant-Intervenors Norca Industrial Company, LLC and Industrial Procurement & Piping Group, LP, submit this response in opposition to the motion for judgment on the agency record ("Pls.' Br.") filed by Consolidated Plaintiffs Tube Forgings of America, Inc. and Mills Iron Works, Inc. ("Plaintiffs").

## I.  RULE 56.2 STATEMENT

### A.  Administrative Determination Sought to Be Reviewed

The administrative determination under review is *Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Determination of Covered Merchandise Inquiry*, 88 Fed. Reg. 69909 (Dep't of Commerce Oct. 10, 2023) ("Final Results") (P.R. 84), and accompanying *Decision Memorandum for the Final Results of Covered Merchandise Inquiry – EAPA Inv. 7335: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China* (Dep't of Commerce Sept. 29, 2023) ("IDM") (P.R. 83).

### B.  Issue Presented

Whether Commerce's Final Results in the Covered Merchandise Review ("CMI"), finding that rough fittings originating from China that undergo the second and third stages of production in Vietnam are not subject to the scope of the Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China ("Order"), is in accordance with law and supported by substantial evidence.

## II.  ARGUMENT

Contrary to Plaintiffs' claims, Commerce correctly interpreted the scope of the antidumping duty order on carbon steel butt-weld pipe fittings ("CSBW fittings") from China in confirming that merchandise that undergoes the second and third production stages in Vietnam from Chinese-origin rough parts are outside the scope of the Order.  Commerce complied with its

1

regulations, evaluated the record, and reasonably interpreted and applied the Order. Its determination was supported by substantial evidence and in accordance with law. Plaintiffs provide the Court with no grounds on which to overturn Commerce's decision, particularly given the applicable standard of review in challenges to Commerce's scope rulings.

### A.     Standard of Review

This Court may review a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017). In reviewing scope rulings, the Court must give Commerce "substantial deference with regard to its interpretation of its own {AD} orders," which are "particularly within the expertise and special competence of Commerce." *King Supply Co. v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (citations and quotation marks omitted). Accordingly, the Court must affirm "a Commerce scope ruling that is supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods.*, 851 F.3d at 1381 (citing 19 U.S.C § 1516a(b)(1)(B)(i)).

Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (internal quotation marks and citation omitted). The possibility of drawing two inconsistent conclusions from the record "does not prevent an administrative agency's finding

2

from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).

  **B.**  **Legal Framework for Scope Rulings**

When Commerce publishes an antidumping duty ("AD") order, it defines the scope and "includes a description of the subject merchandise, in such detail as {Commerce} deems necessary." 19 U.S.C. § 1673e(a)(2). Commerce often must determine whether a certain product is included within the scope of an AD order because it must write scope language in general terms. *Meridian Prods.*, 851 F.3d at 1379 (citations omitted). When Commerce confronts such a question, it follows the analytical framework and procedure outlined in its regulations. 19 C.F.R. § 351.225.

Commerce amended its regulations in 2021, such that when determining if a product is covered by the scope of an AD order, Commerce "may make its determination" based on the language of the scope alone. 19 C.F.R. § 351.225(k)(1) (emphasis added). But in making this determination, Commerce has discretion to consider the (k)(1) sources, which include the petition pertaining to the order at issue, previous determinations by Commerce, and the ITC reports pertaining to the order at issue. 19 C.F.R. § 351.225(k)(1). If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling regarding whether the product falls within the order's scope. 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005). The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l LP v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

### C. Commerce appropriately relied on (k)(1) sources in determining that merchandise described in scenario 2 of the CMI does not fall within the scope of the Order.

Plaintiffs argue that Commerce erred by interpreting the term "unfinished fitting" because the Order "does not use that term." Pls.' Br. at 20. Plaintiffs further fault Commerce for engaging in "the facially absurd exercise of attempting to establish 'the point in the production process when a fitting becomes an unfinished fitting'" and for resorting to (k)(1) sources in rendering its Final Results. *Id.* at 20, 25-26. Plaintiffs' arguments are absurd.

The Order covers "certain carbon steel butt-weld pipe fittings" in "unfinished form." *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29702, 29703 (Dep't of Commerce Jul. 6, 1992). A fact Commerce plainly acknowledged as the predicate for its analysis. (P.R. 84, IDM at 21.)

Commerce's role in a scope proceeding is to determine whether the merchandise before it is covered by the Order. *Meridian Prods.*, 851 F.3d at 1379; 19 C.F.R. § 351.225. Here, that meant Commerce had to determine whether merchandise described in Scenario 2 of the CMI— *i.e.*, merchandise that underwent "the first stage of production in China and the second and third stages in Vietnam"—is covered by the Order. (P.R. 84, IDM at 2-3, 21.) To accomplish that task, while not impermissibly expanding the scope of the Order, Commerce explained that it had to ascertain what constitutes a fitting in unfinished form. (*Id.* at 21.) In other words, Commerce evaluated whether the merchandise described in Scenario 2 of the CMI were CSBW fittings in "unfinished form." Commerce, however, did not read words into the Order as Plaintiffs allege. Pls.' Br. at 20. It instead merely used "unfinished fitting" as a shorthand for the language in the

Order; namely, "certain carbon steel butt-weld pipe fittings . . . in unfinished form."  (P.R. 84, IDM at 17.)

Beyond wrongly accusing Commerce of interpreting words not found in the Order, Plaintiffs criticize Commerce for engaging in any interpretation of the Order, contending that "there is nothing in the China Order's scope language for Commerce to interpret" because the "Order states clearly that it covers 'carbon steel butt-weld pipe fittings in either finished or unfinished form' without further limitation or qualification."  Pls.' Br. at 20, 25-26.  But Plaintiffs' argument begs the question that Commerce sought to answer by resorting to the (k)(1) sources.  Nothing in the Order defines a CSBW fitting in "unfinished form."  (P.R. 84, IDM at 21.)  And despite their protestations, Plaintiffs cite to no such language.  To resolve the scope question, Commerce accordingly had to determine what constitutes a CSBW fitting in "unfinished form," and to aid that analysis, Commerce turned to (k)(1) sources.  (*Id.*)

Considering (k)(1) sources to ascertain the scope of the Order was appropriate and permitted.  19 C.F.R. § 351.225(k)(1); *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) (Final Rule); *Meridian Prods.*, 890 F.3d at 1277 ("in reviewing the plain language of a duty order, Commerce must consider" the (k)(1) sources).  Indeed, Commerce's approach here followed precisely the analytical framework outlined by the Federal Circuit: "First, Commerce must consider the scope language contained in the order itself, the description contained in the petition, and how the scope was defined in the investigation and in the determinations issued by Commerce and the ITC."  *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015).

**D.   Substantial evidence supports Commerce's determination that Chinese-origin rough fittings—*i.e.*, merchandise that only underwent the first stage of production in China—are not CSBW fittings in unfinished form, and thus not covered by the Order.**

The CMI asked Commerce whether merchandise that underwent only the first stage of production in China, while undergoing the second and third production stages in Vietnam, is covered by the Order.  (P.R. 84, IDM at 2-3.)  To answer that question, Commerce first consulted primary interpretive sources: the Petition and ITC final report from the investigation.  (*Id.* at 17.)  In reviewing these primary (k)(1) sources, Commerce found that the Petition described the production of CSBW fittings and that this description "clarifies the language of the Order . . . by delineating the point at which a production input becomes an unfinished or finished fitting and, thus, subject to the Order."  (*Id.* at 22.)  Commerce also noted that the Petition described the production process for CSBW fittings in the same manner as the CMI:

> First, pipe is cut to length and then formed into the desired shape of the fitting through various methods. After the initial forming, there is a reforming or coining process where fittings may also undergo heat treatment. Only after these processes are complete are the products considered to be "unfinished fittings" subject to the Order within the meaning of the scope. The Petition then describes the finishing processes that the subject unfinished fittings undergo, including shot blasting, beveling, and painting, to transform them into finished butt-weld pipe fittings.

(*Id.* at 17-18.)  Based on the Petition description, Commerce found that "the fitting is not considered an unfinished fitting until after the stage two operations, which include reforming, coining, and heat treatment."  (*Id.* at 18.)  Commerce found that the ITC Report confirmed the Petition description.  (*Id.*)  According to the ITC, an "unfinished pipe fitting is a fitting that has been advanced after forging but which requires at least one more processing step (*i.e.*, {stage three finishing processes}) to finish the fitting."  (*Id.*)

6

Based on the (k)(1) primary source analysis, Commerce referred to "a product that has undergone the first stage of production but not the second and third stages" as a "rough fitting" that "is a material input" to the production of CSBW fittings in finished and unfinished form but is not "an unfinished fitting" (*i.e.*, a CSBW fitting in unfinished form) "in its own right." (P.R. 84, IDM at 19-20.)  As such, Commerce correctly relied on the Petition and ITC Report to interpret a CSBW fitting in unfinished form to mean merchandise "after the reforming process, or second stage of production." (*Id.* at 18.)

Plaintiffs contend that Commerce should have relied on declarations from its executives submitted as part of the CMI scope proceeding to find no distinction between "rough fittings" and "unfinished fittings." Pls.' Br. at 26-29. But Plaintiffs miss the mark. These declarations are secondary sources, which conflict with the primary interpretive sources; namely, the Petition and ITC Report. Commerce regulations address this precise situation, explaining that if there is a conflict between secondary sources and primary interpretive sources, "the primary interpretive sources will normally govern in determining whether a product is covered by the scope of the order at issue." 19 C.F.R. § 351.225(k)(1)(ii). Based on its regulations, Commerce correctly relied on the primary interpretive sources instead of litigation-inspired declarations by Plaintiffs' executives that conflict with the information and usage in the Petition and ITC Report.

Plaintiffs' lengthy discussion about the "essential characteristics" of a CSBW fitting likewise misses the mark. Plaintiffs again cite to secondary sources, which Commerce, based on its regulations, declined to elevate over the primary interpretive sources. (P.R. 84, IDM at 22.) As Commerce explained, the Petition described "sizing and heat treatment"—both stage 2 production steps—as "crucial processes for the integrity of the finished butt-weld pipe fittings." (*Id.*)

7

While Plaintiffs contend the second production stage is inconsequential, Commerce disagreed. According to the Petition, the second production stage "is necessary to ensure that the fitting will match the pipe to which it is attached" while heat treatment "relieves stress build-up within the fitting during the forming process." (*Id.*) Commerce fully addressed Plaintiffs' arguments about the Petition and ITC Report, explaining that Plaintiffs based their arguments on snippets of language from the Petition and ITC Report shorn from context. (*Id.* at 23.) When evaluated in their entirety, Commerce found that the primary interpretive sources fully supported Commerce's interpretation while undermining Plaintiffs' arguments concerning the significance of the second production stage. (*Id.* at 23-24.)

Commerce further reviewed the Commerce memorandum recounting a discussion with a CBP official that Plaintiffs cite, and explained why the document also undermines Plaintiffs' arguments. (P.R. 84, IDM at 24-25.) Indeed, the document indicates that a "rough fitting" potentially would fall under a different HTSUS classification than the one identified in the Petition for CSBW fittings in finished or unfinished form—something that undermines Plaintiffs' argument and support Commerce's interpretation. (*Id.*)

Plaintiffs also contend that deletion of language added by Commerce to the notice of initiation in the original antidumping investigation undermines Commerce's interpretation because it demonstrates that roughs are unfinished fittings covered by the Order. Pls.' Br. at 30-31. Commerce addressed and rejected this argument in the preliminary determination (P.R. 65, PDM at 11), which Plaintiff did not address in its case brief. According to Commerce, in view of the Petition, "the language that Commerce removed was unnecessary to the proper administration of the scope and may have merely added confusion to it." (*Id.*) Plaintiffs'

8

disagreement with Commerce's finding does not mean it was not supported by substantial evidence. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006).

For all Plaintiffs' arguments about "substantial evidence," Plaintiffs fail to identify any argument Commerce failed to address. Plaintiffs' arguments are nothing more than disagreement with Commerce's findings and a request for the Court to reweigh the record and substitute its judgment for that of Commerce. But that decidedly is not the role of the Court in this proceeding. The question for the court is "not whether we agree with [Commerce's] decision, nor whether we would have reached the same result as [Commerce] had the matter come before us for decision in the first instance," but whether Commerce's determination was "reasonable and supported by the record as a whole." *Id.* Applying this standard, this Court should uphold Commerce's determination because "its factual findings are reasonable and supported by the record as a whole." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (CIT 2001).

Commerce complied with its regulations to interpret the Order, fully evaluated the record, and made reasonable factual determinations as part of its interpretive analysis. Applying its interpretation to Scenario 2 of the CMI, Commerce correctly and reasonable determined that "{i}f Chinese-origin rough fittings, *i.e.*, fittings that have completed the first stage of production but are not yet subject unfinished fittings, undergo both the second and third stages of production in Vietnam, then the rough fittings would be outside the scope of the Order when exported from China and the stages two and three processing conducted in Vietnam would not change that designation." (P.R. 84, IDM at 18.)

9

>  E.  The *Thailand Circumvention Ruling* supports Commerce's Final Results in this CMI Proceeding that rough parts are not CSBW fittings in unfinished form, and thus not covered by the Order.

Plaintiffs contend that in the *Thailand Circumvention Inquiry*, Commerce found that Chinese-origin rough parts were butt-weld fittings in unfinished form, and that those rough parts were merchandise subject to the Order.  Pls.' Br. at 39.  Plaintiff mischaracterizes the record.  As Commerce explained, in the *Thailand Circumvention Inquiry*, it found that "imports into the United States of pipe fittings that were finished in Thailand from {rough fittings} produced in {China} constitute circumvention," and "pipe fittings that were finished in Thailand from {rough fittings} produced in {China} fall within the scope of the antidumping duty order . . ."  (P.R. 84, IDM at 26.)  Plaintiffs are incorrect about Commerce's findings.  Commerce did not find that the rough fittings themselves were butt-weld pipe fittings in unfinished form or that rough fittings were subject to the Order.  Commerce instead determined that fittings finished in Thailand from Chinese rough fittings were circumventing the Order (*i.e.*, the unfinished fittings were a product of Thailand and only subject to the Order after a finding of circumvention).  (*Id.*)

As this Court explained, "{i}n a circumvention inquiry, Commerce analyzes whether a product outside an order's literal scope should nevertheless be included within the scope to prevent circumvention of antidumping and countervailing duty orders pursuant to statutory criteria set forth in 19 U.S.C. § 1677j and regulatory criteria in 19 C.F.R. § 351.225(g)-(j)."  *U.K. Carbon & Graphite Co. v. United States,* 37 CIT 1295, 1300 (2013).  As Commerce recognized, the fact that the Petitioners requested that Commerce initiate a circumvention inquiry, and that Commerce issued a circumvention determination (without objection from Plaintiffs), underscores that literal scope of the Order here does not cover merchandise that has undergone only the first stage of production.

10

### III. CONCLUSION

For the foregoing reasons, Norca and IPPG request that the Court sustain Commerce's Final Results in the CMI proceeding as to Scenario 2; enter judgment in favor the United States, Norca, and IPPG; and grant such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6237
jeremy.dutra@squirepb.com

Counsel for Norca Industrial Company LLC and International Piping & Procurement Group LP