**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| TUBE FORGINGS OF AMERICA, INC. and MILLS IRON WORKS, INC., <br><br>     Consolidated Plaintiffs, <br><br>   v. <br><br> UNITED STATES, <br><br>     Defendant, <br><br> NORCA INDUSTRIAL COMPANY LLC and INTERNATIONAL PIPING & PROCUREMENT GROUP, LP, <br><br>     Consolidated Defendant-Intervenors. | Consol. Court No. 23-00231 |

**NORCA INDUSTRIAL COMPANY, LLC'S**
**COMMENTS IN SUPPORT OF REMAND RESULTS**

  Norca Industrial Company, LLC (Norca) timely submits these brief comments in support of the U.S. Department of Commerce's (Commerce) Redetermination Pursuant to Court Remand (Remand Results). Commerce issued the Remand Results in response to this Court's decision in *Tube Forgings of America, Inc. and Mills Iron Works, Inc. v. United States*, Court No. 23-00231, Slip Op. 25-1 (CIT January 2, 2025) (Remand Order). As Norca outlines in these Comments, Commerce's Remand Results fully comply with the Remand Order, reach the correct redetermination, are supported by substantial evidence, and are in accordance with law.

  At the outset and as a backdrop for its analysis, Commerce appropriately explains that its use of the term "rough fitting" in the Final Results merely conformed to the language U.S. Customs and Border Protection (CBP) used in the covered merchandise referral to describe merchandise that underwent the first stage of production. While the Court raised concerns about

the terminology used, Commerce's analysis and determination in the Final Results tracked the stages of the production process and tied the products resulting from each production step to the text of the antidumping duty order and the primary interpretive sources.  Norca nevertheless agrees with Commerce that by revising its product nomenclature to the stages of production process instead of the terminology used by CBP, Commerce's Remand Results provide greater clarity and avoid the semantic ambiguity that Petitioners erroneously exploit to distract from Commerce's thorough and cogent analysis in the Final Results.  Norca accordingly agrees with Commerce that: (1) "rough shapes" are pipes that have undergone only conversion into a rough shape of an elbow, tee, reducer, etc., through a cold- or hot-forming (or forging process, *i.e.*, stage one of the production process, and (2) "unfinished fittings" are rough shapes that have been reformed or sized to match the pipe it is destined to be welded to, but that have not been finished, *i.e.*, stage two of the production process.  Commerce's revised nomenclature is supported by substantial evidence as it is consistent with how Petitioners referenced the products after each production stage in prior segments, consistent with the report from the U.S. International Trade Commission in the original investigation, and consistent with Commerce's analysis in prior segments.

In the Remand Results, Commerce fully evaluates the 1991 Petition consistent with the Remand Order instructions.  Commerce explains how the petition distinguishes between merchandise that underwent the first stage of the production process and merchandise that underwent the first and second stages of the production process.  Commerce also details how the 1991 Petition confirms that a product becomes an "unfinished fitting" only after the second stage of production.  Based on this analysis, Commerce correctly finds that the 1991 Petition confirms that a carbon steel pipe that has been cut to length in the rough shape of an elbow, tee, or reducer

is not a butt-weld pipe fitting subject to the Order.

Addressing the Court's concerns about the 1992 ITC Report, Commerce fully analyzes the quoted language the Court identified in its Remand Order, in context, to reach the reasonable (and correct) finding that the term "rough-formed unfinished fitting" used by the ITC referenced a product that underwent the first two stages of the production process such that all that remains is the third and final finishing stage. Commerce further supports its analysis by detailing how other language in the 1992 ITC Report confirms that a shape that has been forged—*i.e.*, it underwent only the first production stage—is not yet an unfinished fitting. Finally, Commerce highlights that the 1992 ITC Report refers to the products that result from the first production stage as "pipe" that must undergo the second production stage, *i.e.*, a reforming or sizing operation. In sum, Commerce fully explained why the 1992 ITC Report supports its determination that a rough shape that has only undergone the first production stage is merely an input, not an unfinished fitting covered by the Order.

Commerce correctly analyzes the Declarations from Domestic Industry Executives in its Remand Results. These declarations are not primary sources under (k)(1)(i), but instead secondary sources under (k)(1)(ii). Consistent with Commerce's regulations, primary sources govern if any conflict arises between primary sources and secondary sources. Norca disagrees with the Court's instruction to Commerce with respect to these Declarations; however, Commerce fully responded to the Court's concerns and fully explained why the Declarations do not detract from Commerce's determination. As Commerce highlights, the claims by the industry executives in their declarations submitted decades after the Order issued are inconsistent with the language in the 1991 Petition and the 1992 ITC Report and inconsistent with the Petitioners' actions. Commerce fully explains why it appropriately accords no weight to the

Declarations given their contradictions with the primary interpretive sources.

Commerce also addressed the Court's concerns about the Thailand Circumvention Inquiry, noting that if Commerce considered rough shapes from China to be unfinished butt-weld pipe fittings subject to the Order, no circumvention inquiry would have been necessary because such rough shapes would already have been explicitly covered by the scope of the Order. In other words, that Commerce conducted a circumvention inquiry for rough shapes from China, by definition, means that those rough shapes are not covered by the Order. The Thailand Circumvention Inquiry fully supports Commerce's determination that rough shapes produced from the first production stage are not subject to the scope of the Order.

Having addressed the Court's Remand Order, Commerce correctly determines in its Remand Results that merchandise that undergoes the second and third stages of production in Vietnam is not subject to the scope of the Order. This determination is supported by substantial evidence and is in accordance with law. Norca respectfully requests that the Court sustain Commerce's Remand Results.

Date: July 30, 2025

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6237
jeremy.dutra@squirepb.com

*Counsel for Norca Industrial Company LLC*
